ONIELL, Chief Justice.
 

 The defendants are appealing from a judgment rendered against them in a hypothecary action. The suit is to enforce a' judicial mortgage in favor of the plaintiffs, for $3,-000, upon a tract of land which the defend-' ants bought from the judgment debtor, Mrs. Ellen Elizabeth Young.
 

 The Harris Realty Company is an ordinary partnership" composed of Charles W. Harris and J. W. Thompson, who are the real defendants in the suit. They bought the land in the name of the firm, from Mrs. Young, in-New Orleans, on Friday afternoon, the 8th of April, 1932, for $4,000, for which they gave their promissory note payable one year after date and secured by a mortgage and vendor’s lien on the property, which is in St. Tammany parish. The notary public, before whom the sale was passed, mailed a duplicate copy of the deed to the clerk of court, ex officio recorder, for the parish of St. Tammany, at Covington, the parish seat, on Saturday, the 9th of April, and it arrived there on Monday morning, the 11th of April, and was filed for record at 11 o’clock that forenoon. In the meantime, that'is to say, on Saturday, the 9th of April, 1932, at 10:40 a. m., the plaintiffs’ judgment against Mrs. Young was filed for record in the office of the recorder, in Covington. In other words, the defendants’ deed from Mrs. Young was signed on the day before the plaintiffs’ judgment against her was filed for •
 
 *949
 
 record, but the deed was not filed for record until the second day after the judgment was filed for record.
 

 The defendants contend that they acquired the property free from the judicial mortgage because the judgment was not re■corded or filed for record when they bought the property, and because their deed was filed for record promptly. Considering that -one who files a judicial mortgage for record must deal with the condition of the public records as he finds it, and does not part with anything of value on his faith in the records, as does one who buys property or takes a conventional mortgage upon it, perhaps the law ought to protect the one who buys property, or who takes a conventional mortgage on it, against a judicial mortgage recorded subsequently, but recorded before the sale or conventional mortgage is recorded. But the law does not make any such distinction between a judicial mortgage and a conventional mortgage or a sale. Neither a judicial mortgage nor a conventional mortgage or a sale of real estate can have effect as to third parties until it is filed for record. Judicial mortgages and conventional mortgages and sales of real estate all take effect as to third parties in the order in which such instruments aire filed for record. Rev. Civ. Code, arts. 2254, 2264, 2265, 2266; Act No. 215 of 1610, p. 351; Carraby v. Desmarre, 7 Mart. (N. S.) 661; Williams v. Hagan & Co., 2 La. 122; Gravier v. Baron, 4 La. 239; Mary v. Lampre, 6 Rob. 314; Gradenigo v. Wallett, 9 Rob. 14; Crear v. Sowles, 2 La. Ann. 597; Lyons v. Cenas, 22 La. Ann. 113; Payne & Co v. Pavey, 29 La. Ann. 116; First National Bank v. Ft. Wayne Artificial Ice Co., 105 La. 133, 29 So. 379; Baker v. Atkins, 107 La. 490, 32 So. 69; Roberts v. Edwards, 126 La. 194, 52 So. 272; Washington v. Filer, 127 La. 870, 871, 54 So. 128; State v. Recorder of Mortgages, 175 La. 94, 143 So. 15, 17. In the latter case the court said:
 

 “Hence, all consideration of equity being banished, the creditors of a vendor who record judgments against him after he has sold the property but before the purchaser records his deed may not only ignore the pur: chaser with the unrecorded title, but acquire a judicial mortgage superior in rank to that of all judgment creditors of the purchaser without exception; since ‘there can be no actual owner of immovable property, so far as third persons are concerned, other than the owner of record; for, except as between the parties thereto, an unrecorded conveyance is “utterly null and void,” and conveys no title.’ Baker v. Atkins, 107 La. 490, 32 So. 69, 70.”
 

 Baker v. Atkins is directly in point, viz.:
 

 “1. Where A. is the owner of real estate by undisputed title, and sells the same to B., who fails to record his title, the judgment creditors of A. can acquire judicial mortgages on such property by recording their judgments after the date of such sale and before its registry.
 

 “2. And in such case the judicial mortgages recorded against A. prior to the registry of the sale prime all such mortgages recorded against B., whether the latter be recorded before or after the former.”
 

 In Crear v. Sowles, 2 La. Ann. 597, where a creditor attached a house and lot which the debtor had sold, and the buyer did not file
 
 *951
 
 his deed for record until the next day after the attachment was levied, the court maintained the attachment, and said that the law which required the notary public to record the deed did not relieve the buyer of his duty to have it recorded, but perhaps made the notary public answerable to the buyer for the failure to record the deed within the time prescribed.
 

 Of the many decisions maintaining the rule that a sale of real estate has no effect against third persons until it is filed for record in the office of the recorder of conveyances, we have cited only the cases where the rule has been applied to a third person recording a judgment ’ against the seller, or seizing his property, after the sale is made but before it is filed for record. The decisions on the subject leave no doubt that the rule is just as applicable to suoh a case as it is to a case where an innocent third person buys property from one who has already sold it to one whose deed is not yet recorded. Article 13 of the Civil Code reminds us that, when there is no doubt as what the law on a given subject is, it is not for the courts to say what the law ought to be.
 

 The appellants contend also that this hypothecary action was premature, in that the plaintiffs did not first exhaust their remedies against other persons who were condemned primarily to pay the judgment which was rendered against Mrs. Ellen Elizabeth Young. The judgment was rendered against several persons to whom the ancestor of the plaintiffs had made donations during his lifetime, to the prejudice of the plaintiffs’ legitime, as forced heirs. The value of the estate was fixed in the judgment at $11,250, and the debts at $1,053.70, and hence the legitime (%) at $3,308.77. In the assets of the estate was a cemetery lot appraised at $250, which the plaintiffs retained. Hence the judgment rendered against the several donees was for $4,202.47, of which $1,053.70 was for the creditors named in the judgment, and $3,148.77 was for the plaintiffs. Each defendant was adjudged liable for thet amount of the donation to him or her, and each one in the inverse order of the dates of the donations, "commencing with the last, viz.: H. A. Fortvendel was made liable for $1,000, less $516.55, for which he was a creditor of the estate; Mrs. Florence H. R. Klotz was made liable for $1,500; Mrs. Elizabeth Klares for $3,000; and Mrs. Ellen Elizabeth Young to the extent of $3,000; and, after her, W. G. Robert to the extent of $1,-000; P. Emmet Young to the extent of $500; Peter Y. Young to the extent of $500; and Jessica Olga Young to the extent of $500. H. A. Fortvendel paid the amount of his liability. And it«seems that the plaintiffs "made every effort that could be made to collect from the others whose liability was ahead of Mrs. Young’s. Writs of fi. fa. were issued and were returned by the sheriff, no property found. Garnishment proceedings were served upon attorneys at law who were supposed to have homestead stocks belonging to Mrs. Klares, and a revocatory action was brought to annul a sale which she had made. Repeated demands in writing were made upon Mrs. Young, and upon her attorneys, to assist the plaintiffs in their efforts to collect from those who were primarily liable under the judgment. Besides, the thirty-day de
 
 *953
 
 mand was made upon Mrs. Young, and there-* after the ten-day notice was given to the defendants, as required hy article 69 of the Code of Practice, before the suit was filed; and no suggestion was made either by Mrs. Young or by the defendants that any of the others against whom the judgment was rendered had property that might be seized. The •defendants have no greater right than Mrs. Young has to demand a discussion of property of those who are liable primarily, or ahead of her, for the payment of the judgment. Heirs of Gallaugher v. Hebrew Congregation, 35 La. Ann. 830. Mrs. Young’s liability is like that of a surety, quoad the persons who are liable primarily, or ahead of her, for the payment of the judgment. According to article 72 of the Code of Practice, and article 3047 of the Civil Code, when a surety demands a discussion of property of the principal debtor, the surety must point out to the creditor the property of the principal debtor to be seized; and the property must be in the principal debtor’s possession, and be free from litigation. For that reason the plaintiffs were not obliged to bring the revocatory action against Mrs. Klares, before proceeding to collect from Mrs. Young the amount for which she was liable under the judgment; and for the same reason the plaintiffs were not obliged to await the outcome of their revocatory action against Mrs. Klares, before proceeding against the property of Mrs. Xoung, or against that which she sold, subject to the judicial mortgage of the plaintiffs.
 

 Our conclusion is that the judgment appealed from is correct.
 

 The judgment is affirmed.